### JAMES D. RUSSELL v. HANS P. LAU.

[FILED NOVEMBER 25, 1890.]

1. **Chattel Mortgage :** SALE BY FIRST MORTGAGEE:. SURPLUS. B., a merchant in failing condition, gave a mortgage to R. on his stock of goods valued at $4,000, and also on his real estate, to secure debts of $1,800, and delivered possession of the goods. On the following day B. executed a second mortgage on the goods to secure L. of a debt of $286.86, and, following this, other mortgages to other creditors, of all of which R. had full knowledge, and was given formal notice by L. of his secondary lien on the goods. R. sold the goods at private sale, satisfying his own claim, with a surplus retained in his hands of $237.50, and turned back to B. the remainder of the goods which was immediately appropriated by other creditors than L., who was without opportunity of notice. L. brought his action against R. for the amount of the surplus, which, in the meantime, had been garnished by W. B. & Co. foreign creditors, in an attachment against B. R. appeared and answered as garnishee, failing to disclose the claim and secondary lien of L., but, under an order to pay the $237.50 into court, on the judgment of W. B. & Co., paid the same to their attorney of record, without a satisfaction of the order. On the trial of L.'s action for the surplus against R. judgment was for the plaintiff, and, upon review, it is *held*, that the blanket mortgage of R. was void, that he paid out the surplus in his hands, as garnishee, improvidently, and is liable for that amount to L.

2. **Garnishment :** LIABILITY OF GARNISHEE. A garnishee answering to proceedings in attachment stands in the impartial attitude of a stake-holder between the parties, and is liable for the property in his hands and the amount of his indebtedness, which can only be discharged by the delivery of the property, or money, into the court, in compliance with its orders.

ERROR to the district court for Johnson county. Tried below before BROADY, J.

*S. P. Davidson*, for plaintiff in error, cited : *Tallon v. Ellison*, 3 Neb., 75 ; Herman, Chattel Mtgs., 235–6 ; *Faulkner v. Meyers*, 6 Neb., 418; *Burnham v. Doolittle*, 14

Id., 214; Smith v. Ainscow, 11 Id., 478; Reed v. Fletcher, 24 Id., 436, 452; Turner v. Killian, 12 Id., 585, 586; Densmore v. Tomer, 14 Id., 395; Lee v. Gregory, 12 Id., 284; Davenport Plow Co. v. Mervis, 10 Id., 321; Simmons Hdw. Co. v. Brokaw, 7 Id., 409; Grimes v. Cannell, 23 Id., 187.

J. M. Stewart, and H. F. Rose, contra, cited: Turner v. Killain, 12 Neb., 586; Jones, Chattel Mtgs., sec. 691, and cases cited; Lininger v. Herron, 18 Neb., 450; 23 Id., 197; Code, secs. 224–5, 244–49; Fitzgerald v. Hollingsworth, 14 Neb., 188; Hollingsworth v. Fitzgerald, 16 Id., 492; Clark v. Foxworthy, 14 Id., 241; Edney v. Willis, 23 Id., 63; Smith v. Ainscow, 11 Id., 478; Reed v. Fletcher, 24 Id., 452.

COBB, CH. J.

On March 26, 1889, defendant in error, as plaintiff, filed his petition in the district court for Johnson county against the plaintiff in error and Noyes, Norman & Co., A. B. Symms & Co., W. V. Morse & Co., R. L. McDonald & Co., D. F. Osgood, and C. K. Chamberlain as joint defendants, alleging that on August 9, 1888, plaintiff and all the defendants except Osgood and Chamberlain were creditors of one H. E. Brown, a merchant at Elk Creek, Nebraska; that on the 9th day of August, 1888, said Brown gave a chattel mortgage on his stock of goods to said Russell to secure the amount due him—$1,800—which was the first lien on said goods; that afterwards, but on the same day, said Brown gave plaintiff Lau a second mortgage to secure $286.86; that on August 10, 1888, said Brown gave a third mortgage to said Noyes, Norman & Co., to secure $449.15; that afterwards, but on the same day, said Brown gave a fourth mortgage to A. B. Symms & Co., to secure $218; that afterwards said Brown gave a fifth

mortgage to W. V. Morse & Co., to secure $267.80; and afterwards said Brown gave a sixth mortgage to R. L. McDonald & Co., to secure $336. Said Russell's mortgage was the first lien, said plaintiff Lau's mortgage was the second lien, and by its terms was made subject to said Russell's mortgage; and each of the other mortgages was, by its terms, made subject to the said mortgages of said Russell and said plaintiff Lau.

. The petition further alleges that on the 9th day of August defendant Russell took possession of the said stock of goods for the purpose of foreclosing his lien thereon; that notwithstanding the rights of said plaintiff Lau, said defendants Russell and Osgood, as agent and attorneys for Noyes, Norman & Co. and A. B. Symms & Co., and said Chamberlain acting as agent and attorney for W. V. Morse & Co. and R. L. McDonald & Co., conspiring together for the purpose of cheating and defrauding said Lau, without any legal foreclosure of their mortgages, and without notice, proceeded to sell said stock of goods, and received as the proceeds of such sale three thousand and fifty dollars; that out of said proceeds said Russell, although his claim thereon was only $1,800, appropriated and converted to his own use $2,500, and said Osgood and Chamberlain, for their said clients, wrongfully converted to their own use the balance remaining and being in their hands as the proceeds of such sale, to-wit, the sum of $1,450; that nothing has been paid on said Lau's claim, which remains due, with ten per cent interest thereon from August 9, 1888. Wherefore plaintiff prays for an accounting of the moneys received by said defendants from said sale, and for judgment against defendants for $286.86 and said interest.

The petition contains the averments, in addition to those mentioned, that of the money received from sales of mortgaged property, " the defendant Russell, although his claim upon said fund was but $1,800 and no more, appropriated and converted to his own use and benefit the sum

of $2,500." Paragraph five alleges non-payment of plaintiff's note and mortgage, "and that plaintiff is entitled to have the same paid by defendants from the proceeds of the sale of said mortgaged property, so as aforesaid made by defendants."

The defendant creditors who participated with Russell in the profits of the sales of the mortgaged goods, were non-residents and could not be found.

Plaintiff in error filed his separate answer, admitting the receipt by him, from the sale of the mortgaged property, of $237.50 in excess of the sum secured by his mortgage, but alleging payment to Work Brothers under an order of court, in an attachment suit against him as garnishee, for a defense as to this $237.50.

The reply "denies that any valid binding or final order was made therein against said defendant as garnishee, requiring him to pay to said Work Brothers all or any portion of the moneys received by said Russell from the sale of said mortgaged goods and chattels, and alleges that said defendant was not compelled by any judgment, order, or process of said court so to pay over said money as garnishee or otherwise. 2. If any payment was so made by said defendant by virtue of said pretended order against him as garnishee, the same was wholly voluntary on his part, and made with notice, actual and constructive, of the lien of plaintiff on said mortgaged goods, and with full knowledge of the plaintiff's rights in the premises."

The cause was tried to the court, who found the facts as follows: "The court being fully advised in the premises, finds in favor of defendant Russell and against plaintiff as to all the mortgaged property not sold by defendant Russell under his mortgage, and as to the allegation of fraud and conspiracy against him. The court further finds in favor of plaintiff and against said Russell as to the balance of the proceeds of the property sold by said Russell over and above his mortgage debt, and the court finds that

the amount of the proceeds of said sale over and above said mortgage debt is $237, the court finds there is due plaintiff from said defendant thereon the sum of $237."

Upon this finding judgment was entered for said sum of $237 and costs taxed at $20.48 against defendant Russell, whose motion for a new trial was first overruled.

By a more careful inspection of the record than is set forth by counsel, it appears that the mortgagor made the transfer on August 8, 1889, and the plaintiff in error took possession of the stock of goods on the 9th following; that later, on that day, the chattel mortgage to the defendant in error was executed. On the 11th following the defendant's attorney wrote to the plaintiff urging him to have the goods invoiced and his mortgage legally foreclosed by a public sale, upon twenty days' notice, rather than at a private sale, as it had been understood he contemplated doing. On the 15th following, this letter of the attorney was acknowledged and reply made by the plaintiff that he was having an invoice of the goods taken that day, and, when completed, he would sell $1,800 worth to some one at private sale, or would give twenty days' notice and sell at auction. On September 1 the attorney again wrote to the plaintiff in error expressing surprise that on going to Elk Creek the week before he found that the plaintiff had disposed of the goods without notice to defendant and advising the plaintiff of his client's intention to make a common defense in the anticipated replevin suit of another creditor of the mortgagor, and explaining that it was the plaintiff's duty after satisfying his own claim, even in the manner he had, to deliver the remnant to his client as the next junior mortgagee, and prior creditor to all others. After disposing at private sale of $2,037 of the goods the mortgagee returned the remainder to the mortgagor, and, in fact, to the other creditors junior to the defendant in error.

On March 26, 1889, this action was commenced in the court below, and a summons issued of which the defendant

had service.  On May 7, following, in the attachment proceedings of *Work Brothers & Co. v. Brown,* the mortgagor, the plaintiff in error, answered as garnishee, setting up his mortgage on the stock of goods for $1,800, admitting the sale of $2,040 worth at private sale, without notice, and the delivery back to the mortgagor of the remainder before service of notice of garnishment.  His answer stated that " some time after he had taken possession of the goods he was told by Mr. Rose that he had taken a chattel mortgage from defendant in favor of H. P. Lau & Co., of Lincoln, to secure a claim due them.  The mortgages, which were delivered to Chamberlain and Osgood for other creditors, and that, in favor of H. P. Lau & Co , were all executed and delivered after he had taken possession of the property and during the time he remained in possession of it."

It will be observed that no mention is made in this answer of the demand of the defendant in error that he should sell the goods, if at all, at public sale, after notice, nor of the commencement of this action in the court below, for the surplus of sales in his hands, the subject in garnishment.  But had he done so the order of garnishment would have properly been made as it was, that he pay the surplus into court, and had he complied with the order the amount of the surplus would doubtless have been ordered to be paid over to the defendant in error.  But the plaintiff in error, as garnishee in the attachment proceedings, having, in violation of the order of the court in that case, paid the money into the hands of the attorney for the plaintiffs in attachment, it followed that the trial court rendered judgment for a like amount for the plaintiff there.

In the first part of the plaintiff in error's argument, under subdivision IV of his brief, he directs attention to the fact that before the execution of the chattel mortgage under which the defendant in error claims rights in this action, the plaintiff in error had taken possession of the goods by virtue of his prior mortgage, and thence argues

that the mortgagor, not being in possession of the goods at the date and delivery of the subsequent mortgages, could not convey any title or lien to defendant in error, and further, the plaintiff in error, having taken possession of the goods, continued to sell the same at retail with the knowledge and consent of the mortgagor, it was the same disposition of the property in fact, so far as the other creditors were concerned, as if the mortgagor had continued to sell the same at private sale after the execution of the subsequent mortgages to other creditors.

It is presumed that the main part of this argument is intended to be predicated upon the theory and supposition that the mortgage to the plaintiff in error was a legal and sufficient instrument, in which condition it has been held, and is the settled law of this state, that the execution, delivery, and filing in the proper office, of a valid chattel mortgage, conveys to the mortgagee the legal title to such chattels; and it would, therefore, be altogether doubtful if the subsequent mortgage to the defendant in error would have conveyed any title to the goods then in the possession of the plaintiff in error, and being sold to satisfy his prior mortgage.

But in the recent case of *H. E. Brown, plaintiff in error, v. George L. Work et al., defendants in error,* in an opinion at the present term, *ante,* p. 800, it was held that this identical mortgage having been taken upon the entire personal estate of the mortgagor, of a value largely in excess of the debt to be secured, and of the creditors' claims, was fraudulent and void as to the other creditors of the mortgagor who would be, in case this mortgage were held valid, thereby cut off from any security of their respective claims. This mortgage, then, being void, did not stand in the way of that of the defendant in error, the validity of which is not otherwise questioned. This I think disposes of the more important part of the argument of the plaintiff in error. His further argument that, if the defendant's

mortgage was worth anything at all, he had the first lien on the remnants turned back to the mortgagor, and was obliged to exhaust that remedy before charging the surplus of $237.50 garnished by Work Brothers & Co., whose *only* lien was upon that surplus, is sufficiently answered in the reply of the plaintiff below, and not traversed on the trial, that the sales of the goods were private sales, without notice to creditors, and that before the plaintiff was informed of the transaction, and on the same day the mortgagor was again in possession, the remainder of the goods was given up, taken away, and appropriated by other creditors without any probability of plaintiff's recovery from that source. This allegation was sustained on the trial, and was not contradicted by any evidence in the case. Under these circumstances, the plaintiff below pursued his only remedy.

The defense in the court below was the fact of the payment of the surplus under an order of court into the hands of the attorney of record for the attachment proceedings of Work Brothers & Co., against the mortgagor, to which the plaintiff in error had answered as garnishee.

The judgment in attachment was entered May 23, 1889, for $434.63, with a finding as to the amount in the hands of the garnishee, and an order that he pay that amount into the court, to be applied on the judgment of the plaintiffs within twenty days from that date.

It was in evidence on the trial that the defendant paid the amount, $237.50, to the attorney of the firm of Work Brothers & Co., who were residents in Chicago, and not into the court, subject to its order and distribution. The payment was not made in the court house, nor was any part of it then entered there of satisfaction. It was also in evidence that the defendant had full knowledge of the priority of the second mortgage over that of other creditors as well as a direct notice from the plaintiff's attorney that he would be held responsible, in this action, for the surplus in his hands from the sale of the goods, and for its

proper application to the prior lien, thus establishing the superior claim of the defendant in error, over that of the plaintiff in attachment, to the surplus in the hands of the garnishee. The court, in view of this evidence, held that this payment by the garnishee was not a satisfaction of the order.

Sec. 224, Civil Code, provides that in proceedings under attachment, if the garnishee is possessed of any property of the defendant, or is indebted to him, the court may order the delivery of such property, and the payment of the amount owing by the garnishee into court, and (in sec. 225) if he fail to comply with the order of the court, the plaintiff may proceed against him in an action in his own name, and such proceedings may be had as in other actions, and judgment may be rendered for the plaintiff for what shall appear to be owing by him to the defendant, and for the costs of the proceedings against the garnishee. Under these provisions, the court assumed jurisdiction and authority to determine the question of superiority and that of the liability of the garnishee to a strict compliance with the order of the court.

In the case of *Wilson v. Burney*, 8 Neb., 39, where the garnishee appeared and answered inconclusively, and an order was made requiring him to pay a certain sum, owing by him to the defendant, into court, from which no appeal was taken, and default having been made by the garnishee, the judgment was paid after execution, by the defendant's surety, who recovered the amount in an action against the garnishee, which was affirmed on error, holding the garnishee to the strict order of the court, and that the surety was subrogated to the rights of the plaintiff.

And subsequently, in *Hollingsworth v. Fitzgerald*, 16 Neb., 492, it was also held that "in an action by an attachment plaintiff against a garnishee founded upon an order of court, made upon the answer of the garnishee to pay money into court, the order is not conclusive as to the indebted-

ness of the garnishee, nor as to his rights, and the question of indebtedness at the time of the service of notice of garnishment, may be inquired into in an action by the attachment-plaintiff against the garnishee." If such an action may be brought, it will not be questioned that, under the circumstances and conditions of this case, the present action will lie.

It has been laid down by an accepted authority on proceedings in attachment that "As an attaching creditor can acquire, through the attachment, no greater rights against the garnishee than the defendant has, except in cases of fraud, it follows that the extent of the garnishee's liability is to be determined by the value of the defendant's property in his hands, or the amount of the debt due from him to the defendant.

"The garnishee is a mere stake-holder between the parties, and it would be manifestly unjust, in that position, to subject him to a judgment for a greater amount than that in his hands.

"It is his recognized right to discharge himself from personal liability by delivering into court the property of the defendant which is in his hands. In such case the property is wholly within the control of the court, and the garnishee is thus relieved from all responsibility therefor, and is not considered as having any further concern in the proceedings." (Drake on Attachment, p. 661.) This authority seems fully to justify the ruling of the trial court in this case.

The plaintiff in error assigns as the seventh error, in the trial below, the admitting in evidence of the letter of the attorney of H. P. Lau & Co. to the mortgagee, previous to the sale of the stock of goods, relating to the claims of the next creditor.

It has almost uniformly been held that a judgment would not be reversed for the admission of doubtful evidence on the trial of a cause to the court, without a jury,

and the reason for this is too plain to be mistaken. But in this case I think the evidence was admissible generally, and no fact is stated in the brief taking the case out of the general rule. The reply of the party was admitted with it, and he was not denied an opportunity to explain the circumstances, or to modify the force of the facts, if he had so pleased, in his answer as garnishee in attachment.

From all the facts disclosed by the record in this case, the overreaching mortgage taken by the plaintiff in error, the knowledge he had of the claims of other creditors, the notice given him by the defendant in error before the disposition of the goods, his inconclusive answer as garnishee, and his improvident payment of the surplus in his hands, not in accordance with the court, we can only come to the conclusion that the judgment of the district court was carefully and properly rendered, and is therefore to be

AFFIRMED.

THE other judges concur.